NICOLL (UNITED STATES v.). See Case No. 15,879.

NICOLSON PAVEMENT COMPANY (JENKINS v.). See Case No. 7,273.

## Case No. 10,254.

### In re NICKODEMUS.

[3 N. B. R. 230 (Quarto, 55);[1] 2 Chi. Leg. News, 49; 16 Pittsb. Leg. J. 233; 2 Am. Law T. 168; 1 Am. Law T. Rep. Bankr. 140.]

District Court, E. D. Michigan.

BANKRUPTCY—PROCEEDINGS FOUNDED UPON LIABILITY AS INDORSER—AVERMENT THAT ONE IS A MERCHANT—COMMERCIAL PAPER.

1. Liability as indorser upon a promissory note was fixed upon N., against whom the holder, as creditor, filed a petition in involuntary bankruptcy, charging the commission of certain acts of bankruptcy. Held, when an indorser's liability has become fixed, such liability constitutes a debt due and payable from the indorser, and may be made the foundation of involuntary as well as of voluntary proceedings in bankruptcy.

[Cited in Re Clemens, Case No. 2,877; Corbett v. Woodward. Id. 3,223.]

2. Fraudulent suspension and non-payment is necessary to be averred only when the act of bankruptcy charged is that specified in clause 9 of section 39 of the act [of 1867 (14 Stat. 536)].

3. Language that N.. "being a merchant," is a sufficient averment that he is a merchant under said clause 9.

4. The term "commercial paper," as used in the bankruptcy act, denotes bills of exchange. promissory notes, negotiable bank checks, paper governed by those rules that have their origin and are established upon the customs of merchants known as the law merchant.

[Approved in Re Chandler, Case No. 2,591. Cited in Re Kenyon, 6 N. B. R. 244.]

5. To be a debtor's commercial paper within said clause 9, the debt which the paper represents must have been incurred by him in his character of banker, merchant, or trader; whether as principal or otherwise, is immaterial.

[Cited in Re Carter, Case No. 2,470.]

[1] [Reprinted from 3 N. B. R. 230 (Quarto, 55), by permission.]

In bankruptcy.

Judge Walter, for petitioner.
Alfred Russell, for debtor.

WITHEY, District Judge. Thomas P. Sheldon, a creditor, has filed his petition to have Peter Nickodemus declared a bankrupt. The debt made the foundation of the petition, is a promissory note for one thousand dollars, executed by Charles Steinberg, payable to the order of Nickodemus, thirty days after date, at the banking office of petitioner, and indorsed by the payee. The note was not paid, and steps taken which fixed Nickodemus' liability as indorser. Four distinct acts of bankruptcy are alleged: First and second are sales, by Nickodemus of his property with intent to delay, defraud, and hinder creditors; third, that Nickodemus, being a merchant, has fraudulently stopped payment of his commercial paper, and has not resumed the same within fourteen days, to wit: that he fraudulently, about the 24th of February last, refused payment of the before describable note, indorsed by him, and has not paid the same within fourteen days thereafter; fourth, that in contemplation of insolvency, March 8, 1869, Peter Nickodemus made a conveyance to Jacob Nickodemus of his real and personal estate, describing it, with intent to give a preference to certain of his creditors.

Respondent appears and shows cause against the petition: first, by objections, in the nature of a demurrer, to the sufficiency of the allegations thereof; and then, by way of answer, denies the acts of bankruptcy, and demands a trial by jury. The objections to the petition are now to be disposed of.

First. It is objected that the nature of the petitioner's demand is not such as constitutes the foundation of involuntary proceedings under the bankrupt law. It is claimed that the demand must be one upon which the alleged bankrupt is bound as the principal debtor, and not as indorser or surety. This objection is not admissible, as will appear by reference to sections 11, 19, and 39 of the bankrupt act. Section 11 provides that any person "owing debts provable under this act, exceeding three hundred dollars," who files his petition for the purpose, "shall be adjudged a bankrupt." By section 19, "all debts due and payable from the bankrupt at the time of his adjudication of bankruptcy, * * * may be proved against the estate of the bankrupt." These provisions establish the right in the debtor to be adjudged a bankrupt on his petition, whenever he is "owing debts, provable under this act, exceeding three hundred dollars." What debts are provable is shown, viz.: "All debts due and payable from the bankrupt at the time of the adjudication of bankruptcy;" and section 19 further provides that where the bankrupt is bound as indorser of a note, "and his liability shall not have become absolute

until the adjudication of bankruptcy, the creditor may prove the same after such liability shall have become fixed." While the language just read from section 19 primarily looks to the right of a creditor to prove, as a debt against the bankrupt, an indorsed note after it has matured, but which had not at the time of the adjudication of bankruptcy, there is a clear recognition that fixed liability by indorsement of a note, is a "debt due and payable from the bankrupt," provable under the act. This being so, then, whenever absolute liability exists against an indorser at the time of filing the petition in bankruptcy. such liability may be made the foundation for voluntary proceedings. So far the law speaks of voluntary proceedings; but section 39 applies those provisions to an involuntary case. It enacts that "any person owing debts as aforesaid," who commits any of the acts of bankruptcy enumerated in this section, "shall be adjudged a bankrupt on the petition of one or more of his creditors." The language, "owing debts as aforesaid," has reference to these words of section 11, viz.: "Owing debts, provable under this act, exceeding three hundred dollars."

We adduce from the foregoing these conclusions: First. The foundation of voluntary proceedings is indebtedness due and payable under the act against the debtor. Second. Whatever debts may be proved in a voluntary, may be proved in an involuntary case. Third. Whenever an indorser's liability has become fixed, such liability constitutes a debt due and payable from the indorser, which may be made the foundation of involuntary as well as voluntary proceedings of bankruptcy.

Of course there must be shown, in an involuntary case, in addition to such indebtedness, at least one of the acts of bankruptcy enumerated in section 39. The Case of Lowenstein [Case No. 8,574] is not regarded as illustrating the point we have been considering. It is too deficient in details to give information of the point decided, if, as is claimed by respondent's counsel, this question there arose.

The second and third objections are to the first and second alleged acts of bankruptcy, viz.: disposing of property "with intent to delay, defraud, and hinder creditors," an act of bankruptcy specified in clause 5, § 39. Respondent objects for want of an averment of fraudulent non-payment of this indorsement, and want of an allegation that he was bankrupt or insolvent, or in contemplation of insolvency or bankruptcy. Both objections are overruled. Fraudulent suspension or non-payment is necessary to be averred only when the act of bankruptcy charged is that specified in clause 9 of section 39. The fourth allegation of the petition charges an act of bankruptcy under clause 9, and avers fraudulent stoppage and non-payment.

In reference to the other of the last-mentioned objections, we remark that bankruptcy or insolvency, or contemplation of bankruptcy or insolvency, would be a necessary averment under clause 8, but is not where the act of bankruptcy is charged under clause 5, when it is sufficient to allege the transfer to have been made "with intent to hinder, defraud, or delay creditors." The respondent's counsel urged the objections we have just been considering, partly on the ground, if not entirely, that the provisions of sections 35 and 39 must be construed together and be made to harmonize. Since the amendment changing "or" to "and" in the last clause of section 39, there is discovered no conflict between these sections. Section 35 does not relate to, or affect the question—what is an act of bankruptcy? By section 39 alone, that question must be answered; whereas section 35 declares what transfers of property and what preferences are void. It is quite clear that facts which are entirely sufficient for adjudicating a debtor a bankrupt on petition of his creditor, may be and generally are, wholly insufficient to justify a decree declaring void a transfer of property, or preference given to a creditor. The reason is obvious: a transfer or preference is void only when the purchaser or preferred creditor has, at the time, reason to believe that which by section 35, or the last clause of 39, taints him with fraud in the transaction. That sections 35 and 39 are in pari materia, and to be construed together, so far as necessary to obviate any conflict in the provisions, is not questioned; but no conflict is discovered.

We now look to the fourth objection; and this raises two questions, viz.: Whether by the petition it appears that Nickodemus is a merchant, and whether the indorsed note is the commercial paper of the respondent. Clause 9, § 39, reads as follows: Any person "who, being a banker, merchant, or trader, has fraudulently stopped or suspended, and has not secured payment of his commercial paper within a period of fourteen days, shall be deemed to have committed an act of bankruptcy." The allegation of the petition is that Nickodemus, "being a merchant, has fraudulently stopped payment of his commercial paper," etc. The paper is the note made by Steinberg and payable to Nickodemus, and by him indorsed. We regard the allegation substantially to be, that Nickodemus is a merchant, and that the indorsed note is his commercial paper, etc. The petition is in accordance with form 54, and is regarded as sufficient.

Respondent's counsel claims that the note is not commercial paper, because given for a loan of money. The note may or may not have been given for a loan of money—nothing is stated in the petition from which to determine, except what can be inferred from the copy of the note. Steinberg is the maker, the date is January 21, 1869. Respondent is payee and indorser, and it is payable at thirty days at the banking office of petitioner. This paper may have been given by the

maker to Nickodemus for the purchase of goods, and have been discounted at respondent's request by petitioner. We therefore think the allegation sufficient in both respects. Under a denial of the allegations of the petition, an issue is made, and the proofs will unfold the nature of the transaction, from which it can be determined whether Nickodemus is a merchant and whether the indorsed note is his commercial paper.

The argument of learned counsel involved the question, what is commercial paper within the purview of clause 9, section 39? The Case of Lowenstein [supra] was referred to as authority that a note given for a loan of money is not commercial paper. The facts in that case are not sufficiently stated to unfold the nature of the transaction. The count says: "The Frauenthal notes were not commercial paper; they were not given in the course of, or in connection with the business of the debtors as merchants, but were given for loans of money." We do not regard this case as deciding more than that, in order to be commercial paper of the debtor, it must be paper given in the course of, or in connection with his business as a merchant, and we fully concur with that view.

Commerce proceeds from trade, and is the exchange of one kind of property for another, whether it be by barter, or by purchase and sale. Strictly speaking, merchants and traders are engaged in commercial pursuits, bankers are not; and yet, within the purview of clause 9, the latter are regarded as subject to an act of bankruptcy by non-payment of their commercial paper. We cannot, therefore, say that only that is commercial paper, within the meaning of the bankrupt act, which grows out of and is part of a strictly commercial transaction. So to hold would involve some difficulty in determining that any paper, to which a banker is a party, is his commercial paper—he not being engaged in strictly commercial pursuits—though he may be dealing in commercial paper. Hence, we are of opinion that the term commercial paper is used in the bankrupt act to denote bills of exchange, promissory notes, and negotiable bank checks; paper governed by those rules which have their origin, and are established upon the custom of merchants in their commercial transactions, known as the law merchant. Such paper is usually denominated commercial paper, and we must presume congress used the term in its common acceptation, rather than in a more restricted sense. Under this view, we can understand how the term "his commercial paper" was applied to bankers as well as to merchants and traders.

It may be important to notice that, by the laws of Michigan, notes of the character of that set out in the petition are declared to be within the rules governing inland bills of exchange, according to the custom of merchants.

Having arrived at a solution of the question—what is commercial paper within the meaning of the bankrupt act?—there is still another question, viz.: When is it "his commercial paper?" We have already said, the allegation in this case, that it is his, the respondent's, commercial paper, is sufficient in the petition, and when denied by answer raises an issue to be tried. But inasmuch as the question last suggested is intimately connected, under clause 9, with the discussion of what is commercial paper, it may be advisable to indicate the views of the court as to that question. To be the debtor's commercial paper within clause 9, the debt which the paper represents must have been incurred by the debtor in his character of banker, merchant, or trader. This being so, it matters not whether the note, bill, or check was given for a loan of money, for goods purchased or otherwise; nor whether the debtor is liable thereon as debtor, acceptor, or indorser—whether as principal debtor or otherwise. It must be commercial paper, and the debtor must be a party thereto, with a fixed liability; and it must be a debt incurred in his character of banker, merchant, or trader. Hence, liability by such person, as a mere accommodation indorser or acceptor, would not be "his commercial paper," within the provision of clause 9, because not a debt incurred in his character of banker, merchant, or trader.

The objections are all overruled. The cause will go upon the issue docket under the general denials of the answer filed, when the facts can be fully disclosed.

That an indorser may be proceeded against in involuntary bankruptcy, see In re Clemens [Case No. 2,878]. Under the amendment of 1870, it is held to be unnecessary to aver that the bankrupt was a merchant, etc., where the act of bankruptcy is a suspension and non-resumption of commercial paper for fourteen days. In re Hercules Ins. Co. [Id. 6,402].